**CITY OF BLAINE, Plaintiff–Appellee,**

v.

**JOHN COLEMAN HAYES & ASSOCIATES, INC., Defendant–Appellant,**

**John L. Gilmore, Jr.; Richard Dedmon, Ricky Oakley; and Robert Ramsey, Defendants.**

Court of Appeals of Tennessee,
Western Section,
at Knoxville.

May 20, 1991.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 9, 1991.

Owen, Edwards and Bryant, Knoxville, for plaintiff, City of Blaine.

W. Lee Corbett & Associates, P.C., Nashville, for appellant John Coleman Hayes & Associates, Inc.

CRAWFORD, Judge.

Plaintiff, City of Blaine (hereinafter Blaine) filed a complaint against John Coleman Hayes & Associates, Inc., et al (hereinafter Hayes) in which it seeks, inter alia, rescission of a contract between the parties and a temporary injunction to stay arbitration proceedings instituted by Hayes. In response to the complaint, Hayes filed an application for arbitration pursuant to T.C.A. § 29–5–303 (Supp.1990) and a motion for stay of the court proceedings until the arbitration has been conducted.

In July of 1985, Blaine and Hayes entered into a contract for Hayes to perform professional engineering services for Blaine in connection with Blaine's construction of a waste water treatment and collection system. The contract contains provisions for arbitration as follows:

\* \* \* \* \* \*

7.5.1. All claims, counterclaims, disputes and other matters in question between the parties hereto arising out of or relating to this Agreement or the breach thereof will be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, subject to the limitations and restrictions stated in paragraphs 7.5.3 and 7.5.4 below. This Agreement so to arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in this paragraph 7.5 will be specifically enforceable under the prevailing arbitration law of any court having jurisdiction.

7.5.2. Notice of demand for arbitration must be filed in writing with the other parties to this Agreement and with the American Arbitration Association. The demand must be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event may the demand for arbitration be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

7.5.3. All demands for arbitration and all answering statements thereto which include any monetary claim must contain a statement that the total sum or value in controversy as alleged by the party making such demand or answering statement is not more than $200,000 (exclusive of interest and costs). The arbitrators will not have jurisdiction, power or authority to consider, or make findings (except in denial of their own jurisdiction) concerning, any claim, counterclaim, dispute or other matter in question where the amount in controversy thereof is more than $200,000 (exclusive of interest and costs) or to render a monetary award in response thereto against any party which totals more than $200,000 (exclusive of interest and costs).

7.5.4. No arbitration arising out of, or relating to, this agreement may include, by consolidation, joinder or in any other manner, any person or entity who is not a party to this Agreement.

7.5.5. By written consent signed by all the parties to this Agreement and containing a specific reference hereto, the limitations and restrictions contained in paragraphs 7.5.3 and 7.5.4 may be waived in whole or in part as to any claim, counterclaim, dispute or other matter specifically described in such consent. No consent to arbitration in respect of a specifically described claim, counterclaim, dispute or other matter in question will constitute consent to arbitrate any other claim, counterclaim, dispute or other matter in question which is not specifically described in such consent or in which the sum or value in controversy exceeds $200,000 (exclusive of interest and costs) or which is with any party not specifically described therein.

7.5.6. The award rendered by the arbitrators will be final, not subject to appeal

and judgment may be entered upon it in any court having jurisdiction thereof.

\* \* \* \* \* \*

After Blaine's refusal to pay certain sums allegedly due Hayes for its services, Hayes filed a demand for arbitration with the American Arbitration Association and gave notice thereof to Blaine. Shortly thereafter, Blaine filed the instant case in the Chancery Court for Grainger County seeking, among other things, a rescission of the contract because of the alleged fraud and misrepresentations by Hayes which induced Blaine to enter into the contract.

The trial court denied Blaine's application to enjoin the arbitration proceedings and did not grant Hayes' application for an order requiring arbitration and a stay of the court proceedings pending the arbitration proceedings. Both parties were granted an interlocutory appeal.

The dispositive issue for review is whether the arbitration provisions of the contract require that a claim of fraud in the inducement of the contract be submitted to arbitration.

The Uniform Arbitration Act was passed by our Legislature in 1983 and is now codified as T.C.A. § 29–5–301—§ 29–5–320 (Supp.1990). The provisions of the act pertinent to the controversy before us are T.C.A. § 29–5–302 and § 29–5–303 which we quote:

> **29–5–302. Agreements to submit to arbitration—Jurisdiction.—**(a) A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that for contracts relating to farm property, structures or goods, or to property and structures utilized as a residence of a party, the clause providing for arbitration shall be additionally signed or initialed by the parties.
>
> (b) The making of an agreement described in this section providing for arbi-

tration in this state confers jurisdiction on the court to enforce the agreement under this part and to enter judgment on an award thereunder.

> **29–5–303. Order for arbitration—Stay of arbitration proceeding—Effect of other proceedings involving issues subject to arbitration.—**(a) On application of a party showing an agreement described in s 29–5–302, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.
>
> (b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.
>
> (c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection (a) of this section, the application shall be made therein. Otherwise and subject to § 29–5–318, the application may be made in any court of competent jurisdiction.
>
> (d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.
>
> (e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim

sought to be arbitrated have not been shown.

In the instant case, the arbitration agreement contained in the contract is quite broad in providing for arbitration of "all claims, counter-claims, disputes and other matters in question between the parties hereto arising out of or relating to this agreement or the breach thereof...." Hayes asserts that a majority of jurisdictions that have considered such broad contractual arbitration provisions have held that if the alleged fraud in the inducement is directed to the contract as a whole and not merely to the arbitration provisions therein, the claim of fraudulent inducement is subject to arbitration and is not for trial in the courts. See Annotation, Claim of Fraud in Inducement of Contract as Subject to Compulsory Arbitration Clause Contained in Contract, 11 A.L.R.4th 774 (1982).

Illustrative of the arguments advanced by Hayes are *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and *Quirk v. Data Terminals Systems, Inc.*, 379 Mass. 762, 400 N.E.2d 858 (1980). In *Quirk*, the Court faced practically the same issue which we face in the instant case: "... whether a contract in which the parties undertake to arbitrate any dispute 'arising out of, or relating to' that contract requires that the parties arbitrate claims of fraud in the inducement of the contract. More specifically, should the courts enforce such an agreement to arbitrate when neither party claims that there was fraud in the inducement of the specific arbitration agreement, but one party alleges that there was fraud in the inducement of the contract as a whole?" 400 N.E.2d at 859. The Massachusetts arbitration statute, G.L. c. 251, provides in relevant part:

> [A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

400 N.E.2d at 861. The Court construed the statute to mean "that the arbitration provision be unenforceable only when the arbitration provision itself (and not the contract as a whole) is revoked 'upon such grounds as exist ... for the revocation of any contract.'" 400 N.E.2d at 861. The Court concluded that its construction of the statute is supported by the decision of the United States Supreme Court in *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and a number of state court cases set out in the opinion. The Court in conclusion stated:

> Following the Supreme Court's reasoning in *Prima Paint* and that of the several State courts cited immediately above, we think that the legislative intent of G.L. c. 251 is clear: the arbitration procedure, when selected by the parties to a contract, should be speedy and not subject to delay and obstruction in the courts. In addition to what we perceive is the plain meaning of c. 251, § 1, we note that § 2(b) of that chapter directs the court, when considering an application for stay of arbitration proceedings, to order arbitration unless it finds that "there is no agreement to arbitrate." Where, as here, there is no claim that the arbitration clause itself was induced by fraud, it would frustrate the legislative intent to permit a party to maintain litigation in the courts merely by alleging fraud in the inducement of the contract as a whole.

400 N.E.2d at 861–862.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the question for determination was "whether the federal court or an arbitrator is to resolve a claim of 'fraud in the inducement,' under a contract governed by the United States Arbitration Act of 1925, where there is no evidence that the contracting parties intended to withhold that issue from arbitration." 87 S.Ct. at 1802.

The federal act provides that a written provision for arbitration ... "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9

U.S.C. § 2. The Court, after noting that the federal court is instructed by § 4 of the Act, 9 U.S.C. § 4, to order arbitration if the making of the agreement to arbitrate or the failure to comply is not an issue, held that under the broad arbitration provision a claim of fraud in the inducement of the entire contract must be submitted for arbitration in the absence of evidence that the parties intended to withhold that issue from arbitration.

Mr. Justice Black, in a strong dissenting opinion which was joined in by Mr. Justice Douglas and Mr. Justice Stewart, said:

... The Court holds, what is to me fantastic, that the legal issue of a contract's voidness because of fraud is to be decided by persons designated to arbitrate factual controversies arising out of a valid contract between the parties.

87 S.Ct. at 1808.

Justice Black reached the conclusion that there was no legislative intent that the issue of fraud in the inducement be resolved by arbitration. He said:

... On the one hand, courts have far more expertise in resolving legal issues which go to the validity of a contract than do arbitrators. On the other hand, where a party seeks to rescind a contract and his allegation of fraud in the inducement is true, an arbitrator's speedy remedy of this wrong should never result in resumption of performance under the contract. And if the contract were not procured by fraud, the court, under the summary trial procedures provided by the Act, may determine with little delay that arbitration must proceed. The only advantage of submitting the issue of fraud to arbitration is for the arbitrators. Their compensation corresponds to the volume of arbitration they perform. If they determine that a contract is void because of fraud, there is nothing further for them to arbitrate....

  * * * * * *

With such statutory language and legislative history, one can well wonder what is the basis for the Court's surprising departure from the Act's clear statement which expressly excepts from arbitration

"such grounds as exist at law or in equity for the revocation of any contract." ...

87 S.Ct. at 1812.

While the cases relied upon by Hayes constitute impressive authority in support of its argument, they are not controlling authority and we must respectfully disagree with the conclusion reached by those courts.

Although the pertinent provisions of the controlling arbitration statutes in those cases are essentially the same as the provisions of the Tennessee arbitration statutes, we disagree with the construction placed upon the statutes by the courts.

In this state, the controlling statutory provision for the issue before us is T.C.A. § 29–5–302 which establishes the validity of an arbitration agreement, "save upon such grounds as exist at law or in equity for the revocation of any contract." In order to resolve the issue before us, we must construe this statute. In *City of Caryville v. Campbell County*, 660 S.W.2d 510 (Tenn.App.1983), this Court said:

The rule of statutory construction to which all others yield is that the intention of the legislature must prevail. *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn.App.1978); see *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn.1975). Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language. *Worrall v. Kroger Company*, 545 S.W.2d 736, 738 (Tenn.1977); see *City of Lenoir v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn.1978).

It is the duty of the court to reconcile inconsistent or repugnant provisions of a statute and to construe a statute so that no part will be inoperative, superfluous, void or insignificant. It must give effect to every word, phrase, clause and sentence of the act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy

another. *Tidwell v. Collins, supra* at 676–677.

660 S.W.2d at 512.

Rescission involves the avoidance or setting aside of a transaction. *Mills v. Brown,* 568 S.W.2d 100 (Tenn.1978).

In *Vance v. Schulder,* 547 S.W.2d 927 (Tenn.1977), our Supreme Court said:

An individual induced by fraud to enter into a contract may elect between two remedies. He may treat the contract as voidable and sue for the equitable remedy of rescission or he may treat the contract as existing and sue for damages at law under the theory of "deceit." The latter is grounded in tort.

547 S.W.2d at 931.

In 1983, when the Tennessee legislature passed the Uniform Arbitration Act, they had full knowledge of the long established right of a person to seek rescission of a contract procured by fraud. With this knowledge, we find it logical for the legislature to intend to except actions for rescission from a decision by arbitrators and giving the language of the statute its usual and ordinary meaning, the legislature did just that. This legislative intent is exemplified by Justice Black in the *Prima* dissent. "Fraud, of course, is one of the most common grounds for revoking a contract. If the contract was procured by fraud, then, unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated." 87 S.Ct. at 1810. It would be difficult to improve on this language.

In the case at bar, Blaine is entitled to a judicial determination on the issue of rescission. Although perhaps representing a minority view, we feel this approach represents the better view. Our decision conforms to the dissent in *Prima* and is not without support of decisions from other jurisdictions. See *Atcas v. Credit Clearing Corp. of America,* 292 Minn. 334, 197 N.W.2d 448 (1972) where the Court appropriately noted:

... When the making of the agreement itself is put in issue, as is the result of a claim of fraud in the inducement, that issue is more properly determined by those trained in the law. Issues involving a breach or violation of the agreement, which are primarily issues of fact, can be more properly left to the expertise of those trained in the respective fields of arbitration. There is ample encouragement for both approaches within the terminology of the statute.

197 N.W.2d at 457. See also *George Engine Co., Inc. v. Southern Shipbuilding Corp.,* 376 So.2d 1040 (La.App.1979); *Midwest Window Systems, Inc. v. Amcor Industries, Inc.,* 630 F.2d 535 (7th Cir.1980) interpreting Illinois law.

We emphasize, however, that we do not intend by this decision to make any comment concerning the legal requirements of an action for rescission or the defenses thereto. Should the contract be rescinded there is no contract containing an arbitration clause and the rights of the parties can be fully adjudicated by the court. Should the contract not be rescinded the parties may then proceed to a determination of their disputes under the arbitration provisions.

Accordingly, the judgment of the trial court is vacated and this case is remanded to the trial court for such further proceedings as may be necessary, including the entry of an order staying the arbitration proceedings until a resolution of the issue concerning rescission of the contract is made. Costs of the appeal are assessed against appellee.

HIGHERS and FARMER, JJ., concur.