# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

| | | |
|---|---|---|
| **WADE SPURLING, D.C.**, | ) | Shelby County Chancery Court |
| | ) | No. 107260-3 |
| Plaintiff/Appellant. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9609-CH-00225 |
| | ) | |
| **KIRBY PARKWAY CHIROPRACTIC**, | ) | |
| **INC., UNION CHIROPRACTIC, INC.,** | ) | |
| **BEHRMAN CHIROPRACTIC CLINIC-** | ) | |
| **WESTOWN, INC., and MICHAEL** | ) | |
| **PLAMBECK, D.C. individually and** | ) | |
| **as OWNER, OFFICER and/or** | ) | |
| **DIRECTOR OF KIRBY PARKWAY** | ) | |
| **CHIROPRACTIC, INC., UNION** | ) | |
| **CHIROPRACTIC, INC., and** | ) | |
| **BEHRMAN CHIROPRACTIC** | ) | |
| **CLINIC-WESTOWN, INC.,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

<table>
FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk
</table>

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable D. J. Alissandratos, Chancellor**

**Patricia L. Penn**, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Valerie Barnes Speakman**, JACKSON, SHIELDS, YEISER & CANTRELL,
Cordova, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

The plaintiff, Wade Spurling, D.C., appeals from the order of the trial court granting the defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(6) T.R.C.P. Spurling filed a complaint titled "Complaint For Deceit in Inducement to Contract, Promissory Fraud, Fraud, Intentional Interference With Performance of Contractual Obligations and Breach of Contract." The complaint alleges that Plaintiff owned and operated Spurling Chiropractic Clinic (SCC). He entered into negotiations with Defendant Michael K. Plambeck (Plambeck) for Plambeck to purchase SCC.

Attached to the amended complaint is a copy of a proposed contract which, according to the complaint, was faxed to Spurling. After obtaining approval from Plambeck's agent, Spurling marked through certain provisions that he did not accept, signed the contract and faxed it back to Plambeck's agent. This document provides that any controversy arising out of or relating to this agreement shall be settled through binding arbitration. The same clause is contained in the contract which is attached to a motion to stay proceedings and to compel arbitration filed by Defendants Plambeck and Kirby Parkway Chiropractic, Inc. Following a hearing on these motions, the trial court ordered that the motions be held in abeyance and gave the plaintiff an opportunity to file an amended complaint. Following the filing of the amended complaint, the motions were granted.

Parties are entitled to a judicial determination of the issue of rescission of a contract despite the fact that there is an arbitration clause in the contract. As this Court said in **City of Blaine v. John Coleman Hayes and Assoc., Inc.**, 818 S.W.2d 33, 38 (Tenn. App. 1991):

> In 1983, when the Tennessee legislature passed the Uniform Arbitration Act, they had full knowledge of the long established right of a person to seek rescission of a contract procured by fraud. With this knowledge, we find it logical for the legislature to intend to except actions for rescission from a decision by arbitrators and giving the language of the statute its usual and ordinary meaning, the legislature did just that. . . .
>
> . . . .
>
> . . . Should the contract be rescinded there is no contract containing an arbitration clause and the rights of the parties can be fully adjudicated by the court. Should the contract not be rescinded the parties may then proceed to a determination of their disputes under the arbitration provisions.

*Id*. at 38.

The question then becomes whether or not the plaintiff has sufficiently alleged fraud which would then require a determination by the trial court whether the contract should be rescinded. A motion to dismiss pursuant to Rule 12.02(6) T.R.C.P. for failure to state a claim upon which relief can be granted tests only the sufficiency of the complaint. The failure to state a claim is determined by an examination of the complaint alone. The allegations contained in the complaint are considered alone and taken as true. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994).

All pleadings shall be so construed as to do substantial justice. Rule 8.06 T.R.C.P. However, when averring fraud, the circumstances constituting fraud shall be stated with particularity. Rule 9.02 T.R.C.P. It is not necessary to actually employ the word "fraud" as fraud is a legal conclusion drawn from the facts. *Sullivant v. Americana Homes, Inc.*, 605 S.W.2d 246, 249 (Tenn. App. 1980).

The portions of the complaint, as amended, upon which Plaintiff relies as having stated a cause of action based upon fraud are as follows:

> 3. On July 3, 1995, Plaintiff received a proposed contract by facsimile from Plambeck's agent. The contract, a copy of which is attached as Exhibit "A" hereto, was designated "Employment Agreement" between Plambeck and Plaintiff <u>and did not address the "second clinic" issue</u>. After obtaining approval from Plambeck's agent Sid Weigand (hereinafter "Weigand"), Plaintiff marked through certain provisions that he did not accept, signed the contract and faxed it back to Plambeck's agent at his Arlington, Texas offices.
>
> . . . .
>
> 5. On or about July 17, 1995, Plambeck arrived at the SCC offices in Memphis with a revised contract for Plaintiff to sign. Plambeck represented to Plaintiff that the only difference between the revised contract the contract Plaintiff has signed and faxed to Plambeck's Arlington office on July 3, 1995 were that (1) the provisions Plaintiff had crossed out were, as a matter of fact, deleted and (2) provisions giving Plaintiff his ten (10%) percent interest in the second clinic were, as a matter of fact, included. Plaintiff, relying on these false representations and statements of Plambeck, signed the contract with Plambeck on a signature page similar to Page 16 of the document attached as Exhibit "A" hereto. At that time, Plaintiff was not given a copy of this contract document and has been refused a copy of same upon subsequent requests for a copy.

6. Rather than complying with Plaintiff's request for a copy of the contract executed by him and Plambeck on July 17, 1995, a copy of a purported "Employment Agreement", a copy of which is attached as Exhibit "B" hereto, was forwarded to Plaintiff by facsimile on or about October 31, 1995. A highly significant and obvious difference between these two documents is that the signature of Plambeck in Exhibit "B" is on one page and Plaintiff's signature is on the succeeding page.

At the hearing on the motions following the amended complaint, the trial court made the following observations before issuing his ruling:

THE COURT:  . . . .  I think I understand what you're accusing orally. I didn't see this in the writing because it's not that clear. Orally, if I understand you correctly, here's what you're saying happened: My client, you say, signed a document.

MS. PENN:  Yes.

THE COURT:  He has now been sent a purported original document, a completely different document with pages that have been substituted. Signatures have either been substituted by forgery or have been substituted by taking a signature page from the original document.

MS. PENN:  Or cut out and pasted up, Your Honor. We don't know how it was done because the October 31 document that was sent to us was sent by fax, and as the Court knows --

. . . .

THE COURT:  The problem is this: The Court has been asked once before to, in essence, dismiss the fraudulent allegation you made since the arbitration. The Court says, No, I'm going to give you a chance to amend your pleadings so you can be very specific about fraud.

The thing I hear you all relying on heavily today orally, but not in the amended pleading, is -- and it's really quite simple, and there is law to cover that, if indeed they said here is his signature page and this is the original signature page. You say, yes, what they did, they threw off all the previous pages, threw them away, and substituted others. That is fraud. I don't have that allegation in writing.

If it is indeed, well, they forged his signature, that would be fraud, but I don't have that allegation in writing. If it is indeed they clipped out the signature somehow and tried to duplicate it, that's fraud. I don't have that in writing, and it's a very simple thing to ask your client: Is this your original signature or not on this original document that we have requested in our request for production that's been produced?

But no request for production has been made. So your client doesn't say that is or is not, or if he were saying, I'm confused, I don't know, let's hire a signature expert, and now where I'm at is I'm

hearing oral allegations but not written allegations.

MS. NICHOLS: Your Honor, in Section II, paragraph 6 makes that allegation.

THE COURT: I just read that three times, and you read it to me, and, frankly, I don't see that. All it says is that the signature in Exhibit B is on one page. Plaintiff's signature is on the succeeding page. It isn't a denial that's his original signature. It is not a statement there is a forgery. It isn't a straight out allegation that the documents received had been deliberately thrown away and other documents substituted.

. . . .

THE COURT: I have read those.

Let me ask you, is it your client's assertion orally through you that what has happened is that he negotiated a deal, he saw the original contract, he signed the original contract or facsimile or what he thought was the original deal, and they now have taken his signature page and either forged his signature, substituted his original signature, and completely substituted all of the pages in front of it? Is that his position?

MS. PENN: In some manner, Your Honor.

THE COURT: Then why don't I have that pled? That's a simple enough straight forward thing. This is real simple because I may not be a lawyer. I may be in the medical field, but it is real simple. They have forged my signature. Does your client say it's a forgery by the way?

MS. PENN: No.

THE COURT: It's not a forgery.

. . . .

Does your client say that they cut and pasted his signature form whatever document to be on the document they seek to enforce now? Does he say that?

MS. PENN: That's what we believe happened.

THE COURT: Where does it say they cut and pasted?

MS. PENN: It is not specifically stated in this document that they cut and pasted it because we have not seen the original document.

After carefully reviewing the complaint we have come to the same conclusion as the chancellor in that the plaintiff has alleged to plead fraud with particularity. The judgment of the trial court is affirmed and the cost of this cause are taxed to the appellant.

_____

FARMER, J.


_____

HIGHERS, J. (Concurs)


_____

LILLARD, J. (Concurs)