IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

April 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| CITY OF BLAINE, | ) | GRAINGER CHANCERY |
| | ) | |
| Plaintiff/Appellant | ) | NO. 03A01-9711-CH-00520 |
| | ) | |
| v. | ) | HON. CHESTER S. RAINWATER |
| | ) | CHANCELLOR |
| JOHN COLEMAN HAYES | ) | |
| ASSOCIATES, INC., | ) | |
| JOHN L. GILMORE, JR., | ) | |
| RICHARD DEADMAN, | ) | |
| RICKY OAKLEY, and | ) | |
| ROBERT RAMSEY, | ) | |
| | ) | AFFIRMED and |
| Defendants/Appellees | ) | REMANDED |

Robert C. Edwards, Knoxville, for Appellant.

W. Lee Corbett & Associates, Nashville, for Appellees.

O P I N I O N

_____INMAN, Senior Judge

On July 10, 1985, the City of Blaine [Blaine] and John Coleman Hayes and Associates [Hayes] entered into a contract whereby Hayes agreed to perform professional engineering services for Blaine in connection with the construction of a waste water treatment and collection system. The contract provided for arbitration if disagreements arose; Blaine filed this complaint seeking rescission of the contract alleging fraudulent inducement, while Hayes sought arbitration and a stay of litigation. On appeal, we stayed the arbitration proceedings until the rescission issue was resolved. *See, City of Blaine v. John Coleman Hayes,* 818 S.W.2d 33 (Tenn. App. 1991).

Following remand, Hayes filed a motion for summary judgment pleading the bar of the Statute of Limitations of three years, T.C.A. § 28-3-105.[1] After considering a host of affidavits and depositions, the Chancellor found that the cause of action accrued more than three years before the complaint was filed and the action for rescission was dismissed. Blaine appeals, and presents for review the issue of whether its complaint accrued more than three years before the filing of it. Review is *de novo* with no presumption of correctness, RULE 13(e),

T. R. A. P.; *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995).

The thrust of Blaine's complaint is that Hayes misled its officials in the matter of the amount of the monthly charges which would be assessed to the users of the system, and thus fraudulently induced the contract. Blaine argues that Hayes represented in March, 1985, that a monthly user rate of $6.00 to $8.00 would adequately finance Blaine's portion of the construction costs. Four years later, this estimate[2] increased to $19.00 monthly, and still later, to about $30.00 per month. Blaine argues that it would not have entered into the engineering contract, in the first place, had Hayes not misrepresented the numbers, and therefore it was defrauded into the execution of the contract on July 10, 1985, and seeks rescission of it to avoid payment of Hayes' services. Hayes argues that Blaine utilized its professional services for more than three years after Blaine became aware that the monthly user fees would be excessive, as evidenced by events which occurred after the contract was executed.

The first phase in designing and constructing a sewer system is to develop what is known as a "201 Facilities Plan." After the 201 Facilities is

---

[1]Which is not disputed.

[2]User fees depended upon (1) the costs of construction, (2) depreciation of the systems, (3) the number of users, (4) collection of the fees, (5) the availability and amount of grant money, since Blaine would require substantial financial assistance. It is not seriously disputed that Blaine was aware of these factors at all times.

completed, it is presented both to the Mayor and Board of Alderpersons as well as to the Tennessee Department of Health and Environment for review. On June 30, 1986, almost a year after the contract was signed, Hayes forwarded to the Tennessee Department of Health and Environment, the final 201 Facilities Plan for the City of Blaine. In the letter accompanying the 201 Facilities Plan, Hayes states that

> the total project cost is recommended at $1,861,072 . . . if the City finances the local share at seven percent (7%) for thirty-five (35) years, the annual debt service would be $28,700 equivalent to $7 monthly per user. Operations, maintenance, billing, administration and depreciation amount to an additional cost of $34,600 annually requiring a total budget of $63,300 and is equivalent to $15.47 monthly per user the first year of operation, *a rate which may be excessive . . . it is obvious, therefore, that Blaine should seek additional financial assistance to reduce the user cost.*

On July 7, 1986, a year after the contract was signed, a copy of the final 201 Facilities Plan was forwarded to Blaine, with a cover letter stating

> there is a significant difference between this final 201 Plan and that presented to the public hearing this past December. TDHE, by technical review, at Number 7, February 20, required that the final 201 Plan "not assume that an innovative bonus will be granted for the central treatment plan" . . . consequently the anticipated local share shown in the summary and on pages 14 and 19 are greater than shown in the January 2 plan. *In both plans, the conclusion is drawn that additional, significant, financial assistance will be needed to have affordable user rates.*

It is thus beyond peradventure that as of July 7, 1986, more than three years before the complaint was filed, Blaine was aware that the amount of the user rates could be significantly higher than expected unless appropriate financial assistance was obtained.

On July 10, 1986, a year after the contract was signed, about four years before the filing of this complaint, and three years before Blaine advised Hayes that its services would no longer be required, the Tennessee Department of Health and Environment informed Blaine that "if Blaine does not secure

funding other than the EPA and state grants, your consultant's figures show a possible user charge of over $25 monthly, rather than $10.00 a month."

This letter is unequivocal notice to Blaine that the monthly user charge would be substantially more than $6.00 to $8.00, as initially discussed. But Blaine insisted that Hayes continue with its design and engineering work for another three years, when a new administration took over, terminated the contract, and refused to pay accrued charges.

The host of affidavits and depositions do not controvert the uncontrovertible fact that at least by July 10, 1986 Blaine was aware that the user rate would be greater than its sewer customers could or would pay. This was more than three years before the complaint was filed. When faced with a supported motion for summary judgment based upon this assertion, Blaine was required to produce evidence of its entitlement to maintain the action. *Merritt v. Wilson County Board of Zoning Appeals,* 656 S.W.2d 846 (Tenn. App. 1983), and it failed to do so.

Finally, we think it permissible to note that the Mayor of Blaine rather vehemently denied that Hayes misrepresented any fact or engaged in fraudulent inducement, insisting that all who participated were fully aware that the projected monthly user rate was an estimate fraught with obvious risks.

The judgment is affirmed at the costs of the appellant, and the case is remanded for further proceedings.

_____
William H. Inman, Senior Judge

CONCUR:


_____

Houston M. Goddard, Presiding Judge



_____

Charles D. Susano, Jr., Judge