# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

April 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

PAMELA BROWN,           )
         )
     Plaintiff/Appellee,     )
         )     Appeal No.
         )     01-A-01-9807-CH-00368
VS.         )
         )     Davidson Chancery
         )     No. 97-2465-II
KAREMOR INTERNATIONAL, INC.  )
and HAGER MARKETING GROUP  )
(a/k/a HMG),         )
         )
     Defendants/Appellants.  )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. MCCOY, CHANCELLOR

KEVIN H. SHARP
CHRISTINE J. LAIRD
424 Church Street, Suite 2800
Nashville, Tennessee 37219
     Attorneys for Plaintiff/Appellee

SCOTT D. CAREY
511 Union Street, Suite 1700
Nashville, Tennessee 37219
     Attorney for Defendants/Appellants

AFFIRMED AS MODIFIED
AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
CAIN, J.
COTTRELL, J.

# O P I N I O N

The Chancery Court of Davidson County refused to enforce an arbitration provision in a product distribution agreement. The court reasoned that the written agreement was an adhesion contract and that the parties had not bargained over the arbitration provision. We affirm as to the claims not related to the written agreement. As to the claim involving a breach of the agreement, we modify the lower court's order to reflect that the question is still open

## I.

In July of 1997 Pamela Brown filed an action in the Chancery Court of Davidson County naming KareMor International, Inc. and Hager Marketing Group as defendants. The complaint alleged that KareMor was a network marketing company for Mayor Pharmaceutical Laboratories, Inc., a marketer of vitamins and other nutrients. According to the complaint Ms. Brown signed a distributor agreement with KareMor in January of 1996 and purchased five boxes of product for $2,790.00. About a week later she attended a KareMor event in Atlanta and was persuaded to purchase eight additional boxes of product for $18,520. She later spoke with a KareMor area coordinator who promised to help her get her money back. Still later, a KareMor vice president promised Ms. Brown that the company would make some adjustments to the product if she would return part of it to the company. She returned the product, but the company kept the product and did not make the promised adjustments.

The complaint included counts of fraudulent inducement to enter into the distributorship agreement, unfair and deceptive practices under the Tennessee Consumer Protection Act, breach of the distributorship agreement, and conversion of her property.

KareMor filed an answer admitting that Ms. Brown became a distributor for the company and purchased the product described in the complaint, but the answer denied the other material allegations. The answer contained an affirmative defense alleging that Ms. Brown was contractually obligated to arbitrate any dispute she had with KareMor.

KareMor then filed a motion for summary judgment on the arbitration defense and attached a copy of the "Distributor Application and Agreement." The form agreement contained some general information on the front, filled in by Ms. Brown, and a section showing that she enrolled in a plan called "E-Plan: Golden Showcase Enrollment System" at a price of $2,790.00. Although titled "Application and Agreement" the form does not show any acceptance by the company. In their statements of undisputed facts filed in connection with the motion for summary judgment, however, the parties agree that the form exhibited with the motion is a copy of the agreement signed by Ms. Brown.

The agreement also included the following statements on the front page in very small print: "I hereby acknowledge that I have received a copy of KareMor International's Policies and Procedures. I have read and understand the Terms and Conditions on the back of this agreement and agree to abide by the Policies and Procedures of KareMor International, Inc." The back of the agreement contained seventeen "Terms and Conditions" in print only slightly larger than the quoted language on the front. The sixteenth item stated:

> This Agreement, its interpretation, construction, and enforcement, shall be governed by the laws of the State of Nevada. Any controversy, dispute, or claim relating to this agreement between the parties shall be resolved by binding arbitration in Carson City, Nevada, in accordance with the rules of the American Arbitration Association, and any judgement of the Arbitrator shall be entitled to enforcement by any court having jurisdiction over the parties.

At the bottom of the back page the company's address appeared as: "KareMor International, P. O. Box 21858, Phoenix, AZ 85036-1858." There is no further proof in the record. Consequently, the record is silent as to the circumstances under which the parties entered into the agreement.

## II.

In 1983 our legislature passed the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301, et seq. At long last an agreement to arbitrate became binding on the parties in Tennessee, contrary to the common law rule and the interpretation given our prior statutes. *See Meirowsky v. Phipps*, 432 S.W.2d 885 (Tenn. 1968). But an agreement containing an arbitraion provision does not require the parties to submit to arbitration disputes unrelated to the agreement. An arbitration agreement in an employment contract does not require the employee to submit to arbitration a claim under the Tennessee Human Rights Act. *Jacobsen v. ITT Fin. Services Corp.*, 762 F. Supp. 752 (E. D. Tenn. 1991). If a contract containing an arbitration provision is procured by fraud, the plaintiff does not have to seek arbitration on the right to rescind. *City of Blaine v. John Coleman Hayes & Assoc.*, 818 S.W.2d 33 (Tenn. App. 1991).

The language appearing on the back page of the agreement exhibited to the motion for summary judgment says "any controversy, dispute or claim relating to this agreement between the parties shall be resolved by binding arbitration in Carson City, Nevada." The complaint includes four counts, three of which are not related to the written agreement. A claim for fraud in the inducement is a tort claim not dependent on the agreement. The claims for violating the Tennessee Consumer Protection Act and for conversion of Ms. Brown's property are not claims "relating to the agreement." Even if we assume that the arbitration provision in the agreement was binding on the parties, Ms. Brown would not be required to arbitrate these claims.

The remaining count in the complaint -- for breach of contract -- does come within the language of the agreement. The chancellor, however held that "Based on the rationale used in [*Buraczynski*] that a contract of adhesion was signed and the analysis provided by that court, the court finds that this provision is in an adhesion contract and it is not clear and it was not fully disclosed at the time that it was signed . . . ." The reference to *Buraczynski* was to *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996) in which the Supreme Court upheld an arbitration provision in a contract between a physician and his patient. The Court did, however, issue a word of caution that "such agreements may constitute contracts of adhesion which must be closely scrutinized to determine if unconscionable or oppressive terms are imposed upon the patient . . . ." 919 S.W.2d at 316.

The Court defined an adhesion contract as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain . . . " (citing *Black's Law Dictionary* 40 (6th ed. 1990). *Id.* at 320. The Court went on to say, however, that an adhesion contract is not per se unenforceable. "Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.*

Our analysis of this question is hampered by the absence of any evidence in the record. The only thing that is established is the agreement, which Ms. Brown admits she signed, and she admits that it did contain the arbitration provision. There is no proof concerning the circumstances under which Ms. Brown signed the agreement. If the arbitration provision was brought to her attention or the contract has some connection to Carson City, Nevada, the facts must at this point remain in the realm of speculation.

KareMor argues that Ms. Brown had the burden to furnish proof that the "Terms and Conditions" on the reverse side of the agreement were <u>not</u> brought to her attention if she is to escape the application of the arbitration provision. We think, however, that the burden was on KareMor to show that the parties actually bargained over the arbitration provision or that it was a reasonable term considering the circumstances. In *Parton v. Pirtle Oldsmobile Cadillac-Isuzu, Inc.*, 730 S.W.2d 634 (Tenn. App. 1987) we dealt with a contract containing boilerplate clauses and said, "a party who signs a printed form furnished by the other party will be bound by the provisions in the form over which the parties actually bargained and such other provisions that are not unreasonable in view of the circumstances surrounding the transaction." 730 S.W.2d at 638. Looking at the four corners of the agreement in this case, we could not say that a provision buried on the reverse side of a form agreement, allegedly signed in Tennessee, requiring that any dispute over the agreement be arbitrated in Carson City, Nevada, was a reasonable provision.

Therefore, we think the question of whether the parties were bound by the arbitration provision is still open. But the chancellor was correct in denying summary judgment to KareMor on that point.

The judgment of the court below is affirmed as modified in this opinion. The cause is remanded to the Chancery Court of Davidson County for further proceedings. Tax the costs on appeal to KareMor, International, Inc.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM B. CAIN, JUDGE

_____
PATRICIA J. COTTRELL, JUDGE