IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2010 Session

FRANKE ELLIOTT, ET AL. v. ICON IN THE GULCH, LLC

Appeal from the Chancery Court for Davidson County
No. 09-477-I     Claudia Bonnyman, Chancellor

No. M2009-01554-COA-R3-CV - Filed May 19, 2010

Purchasers of pre-construction condominium units sued the developer seeking rescission of their contracts to purchase the units. The developer filed a motion to compel mediation and/or arbitration pursuant to the contract. The trial court denied the motion and the developer appeals. Finding error, we reverse and remand.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Thomas Henry Peebles, IV, Nashville, Tennessee, for the appellant, Icon in the Gulch, LLC.

Jean Dyer Harrison, Nashville, Tennessee, for the appellees, Franke Elliott, David Haley, Scott Williams, Terry Miller, and Deborah Williams.

OPINION

I. Background

In April 2006, the Appellees, Franke Elliott, David Haley, Scott Williams, Terry Miller and Deborah Williams (collectively, the "Buyers"), entered into contracts with the Appellant, Icon in the Gulch, LLC ("Icon") for each to purchase a unit in the condominium complex prior to its construction. The contract explained that the closing date would be "established upon the substantial completion of the Unit as determined by the Seller," but that in any event, "[s]ubstantial completion shall be no more than two (2) years from the date of this Agreement." The Buyers each paid $5,000 in earnest money to Icon upon signing their respective contracts.

The contract contained a mediation and arbitration clause that provided in relevant part:

> 32.  Mediation and Arbitration.  All claims, disputes or other matters in question arising out of, or relating in any way to, this Agreement or the breach thereof, including claims against any broker or sales associate, or relating to the relationship involved with, created by or concerning this Agreement, including the involvement of any broker or sales associate ("Claim"), shall be submitted to mediation . . . .  In the event no mediated resolution is reached within sixty (60) days of the party's notice of the Claim, all Claims shall be resolved by binding arbitration by a single arbitrator in Nashville, Tennessee in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.  EACH PARTY ACKNOWLEDGES THAT HE OR SHE IS KNOWINGLY WAIVING THE RIGHT TO A TRIAL BY JURY RELATING TO ALL CLAIMS.  All disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision shall be subject to the same binding arbitration. . . .  The parties acknowledge and agree that the transactions contemplated by, and relating to, this Agreement, which may include the use of materials and components which are obtained from out-of-state and which otherwise include the use of interstate mails, roadways and commerce, involve interstate commerce, as that term is defined in the Federal Arbitration Act, 9 U.S.C. § 2.

The contract also contained a choice of law provision that provided:

> 38.  Tennessee Law.  This Agreement concerns the sale of real property located in the State of Tennessee.  This Agreement, and all of the relationships between the parties hereto, shall be construed and interpreted in accordance with the laws of the State of Tennessee.

In October 2008, the Buyers notified Icon of their intent to terminate their contracts for failure to complete the units within two years.  Icon insisted that the Buyers close on the purchase of the units in accordance with the contract.  On March 12, 2009, the Buyers filed suit in Davidson County Chancery Court alleging fraud and civil conspiracy as well as violation of the Tennessee Consumer Protection Act and the Interstate Land Sales Act.  The Buyers sought rescission of their contracts and a return of all funds paid to Icon.  In response, Icon filed a motion to compel mediation and/or arbitration as called for in the contract.

Following a hearing, the trial court found that Tennessee law governed the contract, including the arbitration agreement contained therein, and, because Tennessee law does not

permit fraudulent inducement claims to be submitted to arbitration, denied Icon's motion. Icon appeals.

## II. Discussion

The central issue in this appeal is whether contract formation issues were excluded from the agreement to arbitrate provision of the contract. We hold that they were not and, consequently, reverse the decision of the trial court.

The Federal Arbitration Act ("FAA") applies to "a written provision in any maritime transaction or a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2 (2006). The purpose of the FAA is "to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (quoting *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Generally, doubts as to whether the issue is to be submitted to arbitration should be resolved in the affirmative. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). When an arbitration agreement in a contract is controlled by the FAA and contains a broad arbitration clause, claims of fraudulent inducement are subject to arbitration. *Taylor v. Butler*, 142 S.W.3d 277, 282 (Tenn. 2004) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).[1]

The FAA's proarbitration policy, however, "does not operate without regard to the wishes of the contracting parties." *Frizzell Construction Co., Inc. v. Gatlinburg, LLC*, 9 S.W.3d 79, 84 (Tenn. 1999) (quoting *Mastrobuono*, 514 U.S. at 57, 115 S.Ct. 1212). As the United States Supreme Court has stated,

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.

---

[1] The United States Supreme Court has held that the FAA requires a court to submit for arbitration claims of fraud in the inducement to enter into the contract. *Prima Paint Corp.*, 388 U.S. at 404, 87 S.Ct. 1801. A court may only address allegations of fraud if they are directed to the arbitration clause itself. *Id.* at 403-04, 87 S.Ct. 1801.

*Volt Info. Sciences, Inc.*, 489 U.S. at 479, 109 S.Ct. 1248 (citations omitted). The question, therefore, is "what the contract has to say about the arbitrability of petitioner's claim...." *Mastrobuono*, 514 U.S. at 58, 115 S.Ct. 1212.

In deciding whether a claim of fraudulent inducement is subject to arbitration, courts must focus upon the specific terms of the contract at issue. *Taylor*, 142 S.W.3d at 283; *Frizzell*, 9 S.W.3d at 84. The Tennessee Supreme Court has held that, where a contract is governed by the FAA, "if the parties agreed to arbitrate the claim of fraudulent inducement, then despite such a prohibition under Tennessee law, the claim must be submitted to arbitration." *Taylor*, 142 S.W.3d at 283.[2] "The converse is equally true – if the parties did not agree to arbitrate the claim of fraudulent inducement, then they could not be compelled to arbitrate the claim despite the fact that the claim could be arbitrated under the FAA." *Id.*

The Buyers assert that the choice of law provision at section 38 of the contract establishes Tennessee law as the law governing all provisions of the contract, including the arbitration agreement. Relying on *City of Blaine*, *Frizzell* and *Hubert v. Turnberry Homes, LLC*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449 (Tenn. Ct. App. Oct. 4, 2006), the Buyers contend that, because the parties agreed to apply Tennessee law in determining the rights and obligations of the parties, arbitration of the claim of fraudulent inducement is inappropriate. The trial court found that the contract was ambiguous with respect to whether the parties intended the FAA or the TUAA to govern the agreement to arbitrate and that, given the ambiguity, the contract should be construed against the drafter, which was Icon. The court further held that Tennessee law, which does not permit fraudulent inducement claims to be submitted to arbitration, governed the contract.

As an initial matter, we find that the contract was not ambiguous. Section 32 of the agreement provided that:

> All claims, disputes or other matters in question arising out of, or relating in any way to, this Agreement or the breach thereof, . . . shall be resolved by binding arbitration.... All disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision shall be subject to the same

_____

[2] The Tennessee Uniform Arbitration Act ("TUAA") has been interpreted and applied to prohibit the submission of contract formation issues to arbitration. *City of Blaine v. John Coleman Hayes & Associates, Inc.*, 818 S.W.2d 33, 37-38 (Tenn. Ct. App. 1991); *Frizzell*, 9 S.W.3d at 84; Tenn. Code Ann. §§ 29-5-301 to -320 (2009). In rejecting the majority opinion in *Prima Paint*, the court in *City of Blaine* interpreted the Tennessee arbitration statute as requiring judicial determination of the issues of rescission of the contract, including fraud in the inducement. *City of Blaine*, 818 S.W.2d at 37-38. Specifically, the court found that there was no contract to arbitrate if the contract was procured by fraud. *Id.*

binding arbitration.... The parties acknowledge and agree that the transactions contemplated by, and relating to, this Agreement . . . involve interstate commerce, as that term is defined in the Federal Arbitration Act, 9 U.S.C. § 2.

Since section 32 expressly provided that the FAA was applicable, the choice of law at section 38 merely provided that issues of substantive law were to be determined by reference to Tennessee law. *See Owens v. National Health Corporation*, 263 S.W.3d 876, 883 (Tenn. 2007); *see also Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926 (6th Cir. 1998), *rehearing and suggestion for rehearing en banc denied* (inclusion of choice-of-law clause calling for application of Ohio law when interpreting contract did not preclude application of FAA and make issue of whether buyer was fraudulently induced into entering into contract nonarbitrable pursuant to Ohio law); *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266 (9th Cir. 2002), *opinion amended on denial of rehearing,* 289 F.3d 615, *cert. denied,* 123 S.Ct. 114, 537 U.S. 825, 154 L.Ed.2d 37 (choice of law clause contained in arbitration provision, which stated that Illinois law was applicable, simply supplied state substantive law, rather than state law rules of arbitration, and thus, agreement incorporated procedural rules of FAA); *Acquaire v. Canada Dry Bottling*, 906 F.Supp. 819 (E.D.N.Y. 1995) (FAA governed arbitrability of disputes under agreement which embodied transactions in interstate commerce, notwithstanding clause requiring disputes to be determined in accordance with New York law; parties intended only to have arbitrator apply New York law once arbitration was commenced). The existence of the choice of law provision was not inconsistent with the agreement to arbitrate pursuant to the FAA.

The fact that the Buyers agreed that the FAA would apply to the contract, particularly the specific language of paragraph 32 that disputes concerning the arbitrability of any claim would be submitted to arbitration, distinguishes this case from *Frizzell* and *Hubert* and compels a contrary result. Neither of the contracts in *Frizzell* and *Hubert* expressly provided that they would be governed by the FAA and neither contained language that specifically required arbitrability questions to be submitted to arbitration. *See Frizzell*, 9 S.W.3d at 81; *Hubert*, 2006 WL 2843449, at \*7. The facts of this case are closer to those in *Taylor v. Butler*, *supra*., wherein the Tennessee Supreme Court held that, notwithstanding the prohibition on arbitration of fraudulent inducement claims under Tennessee law, the claim could be submitted to arbitration because Ms. Taylor had knowingly signed the contract, which clearly stated that the arbitration agreement was to be governed by the FAA. *Taylor*, 142 S.W.3d at 282-83.

Although they have not appealed the decision of the trial court, Buyers raise alternative grounds for upholding the court's denial of the motion to compel arbitration, specifically: that Tenn. Code Ann. § 29-5-302(a) requires, under the circumstances presented

here, that the clause providing for arbitration be separately signed or initialed by the parties; that the FAA does not apply to state courts; and that the provision at issue is "one of adhesion and should not be enforced." Each of these arguments is without merit.

*Hubert v. Turnberry Homes, supra*., specifically held that Section 2 of the FAA preempts Tenn. Code Ann. § 29-5-302(a) in cases involving written agreements to arbitrate disputes arising out of contracts involving interstate commerce, as does the instant contract. *Hubert,* 2006 WL 2843449 at \*6. Also, as noted by the Buyers, *Southland Corp. v. Keating,* 465 U.S. 1, 7-8, 104 S. Ct. 852, 79 L.Ed.2d 1 (1984), held that § 2 of the FAA applies to state courts as well as federal courts.[3] We are referred to no facts or factual allegations in support of the argument that the arbitration provision is one of adhesion. To the extent this may be a claim that Buyers wish to pursue, it is clearly within the scope of section 32 of the agreement.

## III. Conclusion

For the foregoing reasons, we reverse the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.

Costs of the appeal are taxed to the Appellees.

_____
RICHARD H. DINKINS, JUDGE

---

[3] As set forth in their Brief, Buyers urge that the holding of *Southland* is error "solely for the purposes of preserving the issue."